UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSHUA DEWAYNE FOLDS,

                  Plaintiff,                      Case No. 1:25-cv-1419

v.                                      Honorable Sally J. Berens

PAUL JENSEN et al.,

                  Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Brege. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Jensen, Boykins, Beaumont, and Martinez: (1) Plaintiff's official capacity claims; (2) any Eighth Amendment claim against Defendant Jensen premised upon Plaintiff's two-week placement on suicide watch; and (3) any Fourteenth Amendment procedural due process claim premised upon Plaintiff's receipt of a misconduct for fighting. The following personal capacity claims remain in the case: (1) Plaintiff's First Amendment claims against Defendants Martinez and Jensen; (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Martinez; (3) Plaintiff's Eighth Amendment failure to protect/indifference to personal safety claims against Defendants Martinez and Boykins; and (4) Plaintiff's Eighth Amendment

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

claims against Defendants Jensen and Beaumont premised upon interference with and a denial of adequate medical treatment.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the following LRF employees in their official and personal capacities: Acting Assistant Deputy Warden K. Brege, Inspector Paul Jensen, Resident Unit Manager C. Boykins, Health Unit Manager Unknown Beaumont, and Corrections Officer Unknown Martinez. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff alleges that on October 4, 2024, Defendant Boykins authorized Plaintiff to go to the yard. (*Id.*, PageID.4.) However, Defendant Martinez told Plaintiff that he could not go to the yard and that he needed to go back to his cell. (*Id.*) As Plaintiff was standing in the door, Defendant Martinez closed the cell door on Plaintiff's arm. (*Id.*) Plaintiff was stuck for 45 minutes. (*Id.*) Defendant Martinez then opened the door a few inches. (*Id.*) Plaintiff asked to speak to non-party Sergeant Goulet. (*Id.*) Defendant Martinez, however, stuck his head in Plaintiff's cell door and stated, "I got the perfect bunk[ie] for you and if you write a grievance, the hospital will be your next stop!" (*Id.*) Plaintiff responded, "I will write a grievance at my first [opportunity]!" (*Id.*) Defendant Martinez and non-party Officer Nelson then walked away, and Defendant Martinez said, "Real smart[,] you may not make it out [of] the room I got planned for you." (*Id.*)

On October 10, 2024, Plaintiff was moved from the Eastlake Unit to the Dublin Unit. (*Id.*) He was placed with inmate Rogers. (*Id.*) A week later, Plaintiff "started experiencing complications." (*Id.*) Plaintiff alleges that inmate Rogers "was talking to himself and acting wildly

4

weird." (*Id.*) On October 20, 27, and 28, Plaintiff asked Defendant Boykins to move him to another cell. (*Id.*)

On November 6, 2024, Plaintiff spoke with Defendant Boykins and told him that Plaintiff's "bunkie [was] starting arguments with [him,] and [Plaintiff] fear[ed] [they] might get into a fight or something worse." (*Id.*, PageID.4–5.) Defendant Boykins told Plaintiff that there were no open cells. (*Id.*, PageID.5.) Plaintiff asked to be switched with another inmate. (*Id.*) Defendant Boykins responded, "No one wants to be his bunkie." (*Id.*)

On December 8, 2024, Plaintiff spoke to Defendant Boykins again and asked to be moved to another cell. (*Id.*) Plaintiff told Defendant Boykins that his "bunkie [was] uncooperative and [was] going to snap." (*Id.*) Plaintiff stated, "Rogers talks to himself and is picking arguments and fights with me." (*Id.*) Defendant Boykins again told Plaintiff that there were no open cells. (*Id.*)

On December 14, 2024, Plaintiff was sitting at his desk in his cell when inmate Rogers returned from the med line. (*Id.*) Inmate Rogers "rushed towards [Plaintiff] with a shiny object in his hand and stabbed [Plaintiff] in the neck viciously and with reckless force." (*Id.*) Plaintiff lost a lot of blood and had to be rushed to the hospital. (*Id.*) Plaintiff received immediate surgery at Trinity Hospital for "internal bleeding and two stab wounds in the neck." (*Id.*)

Plaintiff claims that "[a]lthough it was concluded [he] was assaulted, [Plaintiff] was written a fighting misconduct. (*Id.*, PageID.6.) However, Defendant Jensen wrote a "protection report" on December 14, 2024. (*Id.*) That day, when Plaintiff returned from the hospital, Defendant Jensen told Defendant Beaumont that Plaintiff "had to write a statement on prisoner Rogers before [Plaintiff] could receive any medical attention." (*Id.*) Plaintiff alleges that he was in pain and was drowsy from the anesthesia and surgery and just wanted pain medication. (*Id.*) However, Defendant Beaumont denied Plaintiff antibiotics and pain medications for four days (*Id.*) After

three days, non-party Nurse Practitioner Bray ordered that Plaintiff receive over-the-counter Tylenol and antibiotics. (*Id.*) Plaintiff alleges further that "they finally changed [his] neck dressing after [three] days when [Plaintiff] had a drainage tube sticking out [of] his neck that had pus[] always leaking out." (*Id.*)

Plaintiff alleges that Defendant Jensen also had Plaintiff placed on suicide watch "in a suicide cell with nothing but a protective gown and blanket because [Plaintiff] refused to write a statement on prisoner Rogers." (*Id.*, PageID.7.) Plaintiff "received little to no medical attention while [he] was on suicide watch." (*Id.*) Plaintiff "never said [that he] was suicidal nor did [he] exhibit any signs of suicidal ideations." (*Id.*) Plaintiff remained on suicide watch for approximately two weeks. (*Id.*) Plaintiff avers that at some point during those two weeks, a non-party nurse told him that inmate Rogers had "almost severed his last bunkie['s] ear off" on August 3, 2024. (*Id.*)

Plaintiff contends that he has "suffered so much pain since the serious injury to [his] neck." (*Id.*) Plaintiff takes Tylenol for the pain and alleges that he has permanent nerve damage. (*Id.*, PageID.8.) Plaintiff also states that he has a bulge in his neck, and argues that Defendant Martinez "is the direct and indirect cause of [his] pain." (*Id.*) According to Plaintiff, "[i]t will take years if not a lifetime for [him] to heal." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert First, Eighth, and Fourteenth Amendment claims. Plaintiff seeks $250,000.00 in compensatory damages and $100,000.00 in punitive damages from each Defendant. (*Id.*, PageID.9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

As set forth above, Plaintiff sues Defendants in both their official and personal capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58,

71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff only seeks monetary damages. (Compl., ECF No. 1, PageID.9.) However, the MDOC is not a "person" who may be sued under section 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their respective official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Accordingly, the Court will dismiss Plaintiff's official capacity claims against Defendants for failure to state a claim upon which relief can be granted.

### B.    Personal Capacity Claims

#### 1.    Claims against Defendant Brege

Plaintiff has named LRF Acting Assistant Deputy Warden K. Brege as a Defendant in this matter. However, Plaintiff does not mention Defendant Brege within the factual allegations of his complaint or otherwise identify any actions that may be attributed to Defendant Brege.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has

consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Thus, Plaintiff's claims against Defendant Brege fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

To the extent that Plaintiff has named Brege as a Defendant because of Brege's position as Acting Assistant Deputy Warden, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d

9

567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Plaintiff fails to allege facts suggesting that Defendant Brege encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in that conduct. As noted above, Plaintiff fails to set forth any allegations at all regarding conduct that can be attributed to Defendant Brege. Thus, Plaintiff has not alleged that Defendant Brege "either encouraged the specific incident[s] of misconduct or in some other way directly participated in [them]." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300).

Accordingly, for the foregoing reasons, Plaintiff's claims against Defendant Brege will be dismissed for failure to state a claim upon which relief can be granted.

## 2.    First Amendment Retaliation

Based on a careful reading of Plaintiff's allegations, the Court will construe the complaint as asserting retaliation claims against Defendants Martinez and Jensen.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

As set forth above, on October 4, 2024, after Defendant Martinez shut Plaintiff's arm in the cell door, Defendant Martinez told Plaintiff, "I got the perfect bunk[ie] for you and if you write a grievance, the hospital will be your next stop!" (Compl., ECF No. 1, PageID.4.) Plaintiff responded, "I will write a grievance at my first [opportunity]!" (*Id.*) By stating his intent to file a grievance, Plaintiff engaged in protected conduct. *See Pasley v. Conerly*, 345 F. App'x 981, 984–95 (6th Cir. 2009).

Plaintiff also suggests that Defendant Jensen had Plaintiff placed on suicide watch because Plaintiff "refused to write a statement on prisoner Rogers." (Compl., ECF No. 1, PageID.7.) "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the prison context, of course, the right to speak or not speak is necessarily

constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

In *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), the United States Court of Appeals for the Second Circuit considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id.* at 88–93. *But see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent that Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). At this stage of the proceedings, the Court will presume that Plaintiff's refusal to provide a statement against inmate Rogers constituted protected conduct as well.

### b.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

12

### (i)        Defendant Martinez

Plaintiff alleges that, after he expressed his intent to file a grievance, Defendant Martinez walked away while stating, "Real smart[,] you may not make it out [of] the room I got planned for you." (Compl., ECF No. 1, PageID.4.) A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). Here, Plaintiff alleges that, right before he expressed his intent to file a grievance, Defendant Martinez stated, "I got the perfect bunk[ie] for you and if you write a grievance, the hospital will be your next stop!" (Compl., ECF No. 1, PageID.4.) Defendant Martinez then added to that threat of harm after Plaintiff stated his intent to file a grievance by stating that Plaintiff "may not make it out [of] the room." (*Id.*) Taking these allegations in the light most favorable to Plaintiff, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Martinez on initial review.

### (ii)       Defendant Jensen

Plaintiff contends that he remained on suicide watch for two weeks after Defendant Jensen had him placed in the suicide cell. (Compl., ECF No. 1, PageID.7.) Plaintiff had "nothing but a protective gown and blanket," and he "received little to no medical attention while [he] was on suicide watch." (*Id.*) Plaintiff "never said [he] was suicidal nor did [he] exhibit any signs of suicidal ideations." (*Id.*)

This Court has previously recognized that "the conditions imposed during suicide watch are such that they would deter a person from engaging in protected conduct." *See Reynolds v. Mattson*, No. 2:07-CV-59, 2008 WL 2704750, at *2 (W.D. Mich. July 9, 2008). Moreover, Plaintiff has alleged facts suggesting that Defendant Jensen had Plaintiff placed on suicide watch

immediately after Plaintiff refused to provide a statement against inmate Rogers. Taking these allegations in the light most favorable to Plaintiff, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Jensen on initial review.

### 3.    Eighth Amendment Claims

The Court has also construed Plaintiff's allegations to assert various Eighth Amendment claims against Defendants Jensen, Boykins, Beaumont, and Martinez.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

14

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Excessive Force

The Court has construed Plaintiff's allegations to assert an Eighth Amendment excessive force claim against Defendant Martinez.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement that, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v.*

*McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that on October 4, 2024, Defendant Martinez told Plaintiff that he could not go to yard and that he needed to return to his cell. (Compl., ECF No. 1, PageID.4.) As Plaintiff was standing in the door to his cell, Defendant Martinez closed the door on Plaintiff's arm. (*Id.*) Plaintiff alleges that he was stuck in the door for 45 minutes. (*Id.*) Although Plaintiff

does not set forth any facts regarding any injuries he suffered as a result of this act, as set forth above, the extent of injury is not dispositive of an Eighth Amendment claim. *See Wilkins*, 559 U.S. at 37. Moreover, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Martinez applied force "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7. Taking Plaintiff's allegations as true, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Martinez on initial review.

### b.        Failure to Protect/Personal Safety

The Court has construed Plaintiff's complaint to assert Eighth Amendment failure to protect/indifference to personal safety claims against Defendants Boykins and Martinez.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Id.* at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, a plaintiff must show that prison officials were deliberately indifferent to his or her risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

As set forth above, Plaintiff alleges that on October 4, 2024, Defendant Martinez told Plaintiff, "I have the perfect bunk[ie] for you." (Compl., ECF No. 1, PageID.4.) Defendant

Martinez also told Plaintiff, "you may not make it out [of] the room I got planned for you." (*Id.*) Six days later, Plaintiff was moved to a cell with inmate Rogers. (*Id.*) Plaintiff asked Defendant Boykins several times to be moved to a different cell and told Defendant Boykins that inmate Rogers was starting arguments and fights with Plaintiff. (*Id.*, PageID.4–5.) Defendant Boykins told Plaintiff that there were no open cells and also mentioned that "nobody wants to be his bunk[ie]," referring to inmate Rogers. (*Id.*, PageID.5.) On December 14, 2024, Plaintiff was severely stabbed in the neck by inmate Rogers. (*Id.*) Thereafter, Plaintiff learned that inmate Rogers had "almost severed his last bunkie['s] ear off" on August 3, 2024. (*Id.*, PageID.7.)

Taking Plaintiff's allegations as true and in the light most favorable to him, Plaintiff has sufficiently alleged facts suggesting that Defendants Martinez and Boykins were deliberately indifferent to the risk of injury that inmate Rogers posed to Plaintiff and ignored that risk. Accordingly, the Court will not dismiss Plaintiff's failure to protect/indifference to personal safety claims against Defendants Martinez and Boykins on initial review.

### c.    Interference with/Failure to Provide Adequate Medical Care

The Court has also construed Plaintiff's complaint to assert Eighth Amendment claims against Defendants Jensen and Beaumont based upon an interference with and failure to provide adequate medical care.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

### (i)    Defendant Jensen

The Court recognizes that, generally, administrative or custody officials, such as Defendant Jensen, who have no training or authority to supervise healthcare officials cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296– 97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Here, however, Plaintiff explicitly alleges that Defendant Jensen told Defendant Beaumont that Plaintiff could not receive any medical attention until Plaintiff provided a statement against inmate Rogers. (Compl., ECF No. 1, PageID.6.) Because Plaintiff has suggested that Defendant Jensen "intentionally deni[ed] or delay[ed] access to medical care or intentionally interfere[ed] with [Plaintiff's] treatment," *Estelle*, 429 U.S. at 104–05, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Jensen premised upon an interference with medical treatment.

### (ii)    Defendant Beaumont

Plaintiff states that as a result of the stabbing by inmate Rogers, he received immediate surgery at Trinty Hospital for "internal bleeding and two stab wounds in the neck." (Compl., ECF No. 1, PageID.5.) When Plaintiff returned to LRF, Defendant Jensen told Defendant Beaumont that Plaintiff could not receive medical attention until he provided a statement against inmate Rogers. (*Id.*, PageID.6.) Plaintiff alleges that as a result, Defendant Beaumont denied Plaintiff

antibiotics and pain medications for four days. (*Id.*) Moreover, Plaintiff's neck dressing was not changed until three days later, even though Plaintiff "had a drainage tube sticking out [of his] neck that had pus[] always leaking out." (*Id.*) Plaintiff also mentions that he received "little to no medical attention while [he] was on suicide watch." (*Id.*, PageID.7.)

Michigan Policy Directive 03.04.100 provides that Health Unit Managers, such as Defendant Beaumont, "shall be responsible for the operation of the Health Care clinic, except for issues that require medical judgment." *See* MDOC Policy Directive 03.04.100 ¶ X (eff. Mar. 10, 2025). Here, Plaintiff has alleged facts suggesting that Defendant Beaumont essentially interfered with the provision of any medical care to Plaintiff by doctors and nurses because of Defendant Jensen's statement that Plaintiff should not receive any medical attention until he provided a statement against inmate Rogers. Taking Plaintiff's allegations as true, the Court will not dismiss Plaintiff's Eighth Amendment claim premised upon interference with and denial of adequate medical care against Defendant Beaumont.

### d.    Placement on Suicide Watch

In an abundance of caution, the Court has construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendant Jensen premised upon his decision to place Plaintiff on suicide watch even though Plaintiff "never said [he] was suicidal nor did [he] exhibit any signs of suicidal ideations." (Compl., ECF No. 1, PageID.7.)

Here, any Eighth Amendment claim against Defendant Jensen premised upon his decision to have Plaintiff placed on suicide watch fails because Plaintiff does not allege any facts suggesting that this decision deprived Plaintiff of any basic human needs. As set forth above, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Even if Plaintiff contends that he was denied certain privileges during his two-week placement on

suicide watch, the Sixth Circuit has held that without a showing that basic human needs were not

met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*,

427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

In sum, Plaintiff's allegations regarding his two-week placement on suicide watch are

insufficient to state an Eighth Amendment claim against Defendant Jensen. Accordingly, this

Eighth Amendment claim will be dismissed.

### 4.    Fourteenth Amendment Claim

As set forth above, Plaintiff claims that, even though he was assaulted by inmate Rogers,

he received a misconduct for fighting. (Compl., ECF No. 1, PageID.6.) Plaintiff mentions,

however, that Defendant Jensen wrote a "protection report" on December 14, 2024. (*Id.*) In an

abundance of caution, the Court has construed Plaintiff's complaint to assert a Fourteenth

Amendment procedural due process claim premised upon the receipt of an allegedly false

misconduct.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or

property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that

one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a

procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or

property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of

Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every

change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*,

427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the

standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As an initial matter, Plaintiff does not provide any facts suggesting that he was convicted of the fighting misconduct. In any event, a prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Furthermore, because Plaintiff provides no facts suggesting that he was convicted of the misconduct and what, if any, sanctions he received, Plaintiff fails to allege facts suggesting that he suffered a "significant and atypical deprivation." Accordingly, the Court will dismiss any Fourteenth Amendment procedural due process claim premised upon Plaintiff's receipt of the misconduct for fighting.

---

[2] Plaintiff is incarcerated for offenses that occurred in 2008. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber= 644342 (last visited Nov. 14, 2025).

**<u>Conclusion</u>**

The Court will grant Plaintiff's motion for leave to proceed *in forma pauperis*. (ECF No. 2.) Having conducted the review required by the PLRA, the Court determines that Defendant Brege will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Jensen, Boykins, Beaumont, and Martinez: (1) Plaintiff's official capacity claims; (2) any Eighth Amendment claim against Defendant Jensen premised upon Plaintiff's two-week placement on suicide watch; and (3) any Fourteenth Amendment procedural due process claim premised upon Plaintiff's receipt of a misconduct for fighting. The following personal capacity claims remain in the case: (1) Plaintiff's First Amendment claims against Defendants Martinez and Jensen; (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Martinez; (3) Plaintiff's Eighth Amendment failure to protect/indifference to personal safety claims against Defendants Martinez and Boykins; and (4) Plaintiff's Eighth Amendment claims against Defendants Jensen and Beaumont premised upon interference with and a denial of adequate medical treatment.

An order consistent with this opinion will be entered.


Dated:   November 25, 2025                    /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              United States Magistrate Judge

24