UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA DEWAYNE FOLDS #644342,

Plaintiff, Hon. Paul L. Maloney

v. Case No. 1:25-cv-1419

PAUL JENSEN et al.,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants Jensen, Boykins, Beaumont, and Martinez's Motion for Summary Judgment asserting the affirmative defense of failure to exhaust administrative remedies. (ECF No. 14.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **grant** the motion, **dismiss without prejudice** Plaintiff's claims against Defendants Inspector Jensen, Resident Unit Manager (RUM) Boykins, and Health Unit Manager (HUM) Beaumont for lack of exhaustion, and **dismiss without prejudice** the retaliation and failure to protect claims against Corrections Officer (CO) Martinez for lack of exhaustion.

## I. Background

[1] Although Plaintiff is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley,* No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

Plaintiff, who is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, filed a complaint against several MDOC employees on November 10, 2025, alleging claims pursuant to 42 U.S.C. § 1983 based on events that occurred at Earnest C. Brooks Correctional Facility (LRF) from October through December 2024. The Court previously summarized Plaintiff's allegations as follows:

> Plaintiff alleges that on October 4, 2024, Defendant Boykins authorized Plaintiff to go to the yard. (*Id.*, PageID.4.) However, Defendant Martinez told Plaintiff that he could not go to the yard and that he needed to go back to his cell. (*Id.*) As Plaintiff was standing in the door, Defendant Martinez closed the cell door on Plaintiff's arm. (*Id.*) Plaintiff was stuck for 45 minutes. (*Id.*) Defendant Martinez then opened the door a few inches. (*Id.*) Plaintiff asked to speak to non-party Sergeant Goulet. (*Id.*) Defendant Martinez, however, stuck his head in Plaintiff's cell door and stated, "I got the perfect bunk[ie] for you and if you write a grievance, the hospital will be your next stop!" (*Id.*) Plaintiff responded, "I will write a grievance at my first [opportunity]!" (*Id.*) Defendant Martinez and non-party Officer Nelson then walked away, and Defendant Martinez said, "Real smart[,] you may not make it out [of] the room I got planned for you." (*Id.*)
>
> On October 10, 2024, Plaintiff was moved from the Eastlake Unit to the Dublin Unit. (*Id.*) He was placed with inmate Rogers. (*Id.*) A week later, Plaintiff "started experiencing complications." (*Id.*) Plaintiff alleges that inmate Rogers "was talking to himself and acting wildly weird." (*Id.*) On October 20, 27, and 28, Plaintiff asked Defendant Boykins to move him to another cell. (*Id.*)
>
> On November 6, 2024, Plaintiff spoke with Defendant Boykins and told him that Plaintiff's "bunkie [was] starting arguments with [him,] and [Plaintiff] fear[ed] [they] might get into a fight or something worse." (*Id.*, PageID.4–5.) Defendant Boykins told Plaintiff that there were no open cells. (*Id.*, PageID.5.) Plaintiff asked to be switched with another inmate. (*Id.*) Defendant Boykins responded, "No one wants to be his bunkie." (*Id.*)
>
> On December 8, 2024, Plaintiff spoke to Defendant Boykins again and asked to be moved to another cell. (*Id.*) Plaintiff told Defendant Boykins that his "bunkie [was] uncooperative and [was] going to snap." (*Id.*) Plaintiff stated, "Rogers talks to himself and is picking arguments and fights with me." (*Id.*) Defendant Boykins again told Plaintiff that there were no open cells. (*Id.*)
>
> On December 14, 2024, Plaintiff was sitting at his desk in his cell when inmate Rogers returned from the med line. (*Id.*) Inmate Rogers "rushed towards [Plaintiff] with a shiny object in his hand and stabbed [Plaintiff] in the neck viciously and with reckless force." (*Id.*) Plaintiff lost a lot of blood and had to be rushed to the hospital.

> (*Id.*) Plaintiff received immediate surgery at Trinity Hospital for "internal bleeding and two stab wounds in the neck." (*Id.*)
>
> Plaintiff claims that "[a]lthough it was concluded [he] was assaulted, [Plaintiff] was written a fighting misconduct. (*Id.*, PageID.6.) However, Defendant Jensen wrote a "protection report" on December 14, 2024. (*Id.*) That day, when Plaintiff returned from the hospital, Defendant Jensen told Defendant Beaumont that Plaintiff "had to write a statement on prisoner Rogers before [Plaintiff] could receive any medical attention." (*Id.*) Plaintiff alleges that he was in pain and was drowsy from the anesthesia and surgery and just wanted pain medication. (*Id.*) However, Defendant Beaumont denied Plaintiff antibiotics and pain medications for four days (*Id.*) After three days, non-party Nurse Practitioner Bray ordered that Plaintiff receive over-the-counter Tylenol and antibiotics. (*Id.*) Plaintiff alleges further that "they finally changed [his] neck dressing after [three] days when [Plaintiff] had a drainage tube sticking out [of] his neck that had pus[] always leaking out." (*Id.*)
>
> Plaintiff alleges that Defendant Jensen also had Plaintiff placed on suicide watch "in a suicide cell with nothing but a protective gown and blanket because [Plaintiff] refused to write a statement on prisoner Rogers." (*Id.*, PageID.7.) Plaintiff "received little to no medical attention while [he] was on suicide watch." (*Id.*) Plaintiff "never said [that he] was suicidal nor did [he] exhibit any signs of suicidal ideations." (*Id.*) Plaintiff remained on suicide watch for approximately two weeks. (*Id.*) Plaintiff avers that at some point during those two weeks, a non-party nurse told him that inmate Rogers had "almost severed his last bunkie['s] ear off" on August 3, 2024. (*Id.*)

(ECF No. 4 at PageID.21–23.)

Following initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are his (1) First Amendment retaliation claims against Defendants Martinez and Jenson; (2) Eighth Amendment excessive force claim against Defendant Martinez; (3) Eighth Amendment failure to protect/deliberate indifference claims against Defendants Martinez and Boykins; and (4) Eighth Amendment claims against Defendants Jensen and Beaumont for interference with and denial of adequate medical treatment. (*Id.* at PageID.41.) Defendants now move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies as to all claims except his excessive force claim against Defendant Martinez.

## II. Applicable Standard

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). In addition, because failure to exhaust is an affirmative defense upon which a defendant bears the burden of proof, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court must ensure that "no reasonable trier of fact could find other than for [Defendants]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

**III. Discussion**

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Jones*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218. A prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019). This process must be completed at all levels prior to filing an action in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

In support of their motion, Defendants attach a Step III Grievance Report for Plaintiff dated December 4, 2025, which shows the grievances that Plaintiff filed at LRF around the time of the events in question and pursued through Step III of the grievance process. (ECF No. 15-4.) Defendants identify three grievances pertaining to Plaintiff's allegations in this case: (1) LRF-25-

01-0010-28e (0010 Grievance); (2) LRF-24-10-1261-28c (1261 Grievance); and (3) LRF-24-10-1219-17z (1219 Grievance). (*Id.* at PageID.113.) Defendants concede that the 1219 Grievance—which alleges that CO Matinez closed the cell door on Plaintiff's head and neck—exhausts Plaintiff's excessive force claim against CO Martinez. The 1219 Grievance does not exhaust Plaintiff's retaliation claim against CO Martinez because nothing therein suggests that CO Martinez acted out of retaliation and Plaintiff's retaliation claim against CO Martinez is based on his alleged threat of harm, not closing the cell door on Plaintiff.

Defendants contend that neither the 0010 Grievance nor the 1261 Grievance exhausted any of Plaintiff's remaining claims because, while the 0010 Grievance pertains to prisoner Rogers's December 14, 2024 attack on Plaintiff, and the 1261 Grievance claims that Plaintiff was denied medical care after being caught in the cell door when it closed, neither grievance named any remaining Defendant in this action. The 0010 Grievance asserts a failure to protect by the Warden (*Id.* at PageID.122), while the 1261 Grievance names Corizon, Health Care, Nurse West Wold, the Warden, and the MDOC Director for denial of medical treatment for Plaintiff's head after the cell door closed on it. (*Id.* at PageID.126.) Because Plaintiff failed to name Inspector Jensen, RUM Boykins, HUM Beaumont, or CO Martinez in these grievances, they could not have exhausted any claim against them. *See Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019) (stating that "because Brown failed to name Rivard, McCullick, Parsons, and Williams at step I of this grievance, he failed to exhaust his claims against them"); *Joyce v. Bergeron*, No. 2:21-cv-70, 2022 WL 3648741 at *9 (W.D. Mich., July 25, 2022), *adopted by* 2022 WL 3647150 (W.D. Mich. Aug. 24, 2022) (holding that because the plaintiff failed to name, or otherwise make reference to, the defendant in his Step I grievance, dismissal on failure to exhaust grounds was appropriate); *Moore v. Westcomb*, No. 2:20-cv-179, 2021 WL 2383725, at *4 (W.D. Mich. Apr.

8, 2021), *adopted by* 2021 WL 1851130 (W.D. Mich. May 10, 2021) (stating that "[w]here a prisoner fails to name a defendant in his Step I grievance, the claim against that individual is not properly exhausted"). Thus, Plaintiff did not exhaust his retaliation claim against CO Martinez and did not exhaust any claim against Inspector Jensen, RUM Boykins, or HUM Beaumont.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (ECF No. 14) be **granted** and that Plaintiff's retaliation and failure to protect claims against Defendant Martinez and all claims against Defendants Jensen, Boykins, and Beaumont be **dismissed without prejudice** for lack of exhaustion. If the Court adopts this recommendation only Plaintiff's excessive force claim against Defendant Martinez will remain in the case.

Dated: September 14, 2026

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).